IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ENTERTAINMENT PROPERTIES TRUST, EPT WHITE PLAINS, LLC, and EPT CONCORD, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>LC NEW ROCK LP, LLC, CITY CENTER GROUP, LLC, CONCORD RESORT, LLC, CONCORD ASSOCIATES, LP, and LOUIS R. CAPPELLI,<br><br>Defendants. | Case No. 10-0158-CV-W-ODS |

## ORDER AND OPINION DENYING MOTION TO DISMISS OR TO TRANSFER VENUE

Pending is Defendant's motion to dismiss or, in the alternative, to transfer venue (Doc. 3). The motion is denied.

## I. BACKGROUND

Defendant Louis R. Cappelli is a New York citizen with control of Defendant LC New Rock LP, LLC, a New York company. In 2003, an agent for Cappelli seeking investments for a real estate project in New Rochelle, New York contacted David Brain, the President and CEO of Plaintiff Entertainment Properties Trust (EPT). EPT is a real estate investment trust headquartered in Kansas City, Missouri. For three months, Cappelli's agent regularly called Brain, and Brain also received calls from Cappelli. EPT eventually extended credit in the principal amount of $5,000,000.00 to LC New Roc in March 2004 for the New Rochelle project. The funds were wired from an EPT bank account in Kansas City. LC New Roc agreed to send its loan payments to EPT in Kansas City. An additional advance in the amount of $5,000,000.00 was made to LC New Roc in January 2007.

During and after the New Rochelle project, Cappelli repeatedly telephoned Brain in Missouri to discuss that transaction and prospective ventures. Prior to August 2007, Cappelli contacted Brain to solicit an investment in a development project located in White Plains, New York. Cappelli's solications resulted in Plaintiff EPT White Plains, LLC, a wholly owned subsidiary of EPT, providing up to $10,000,000.00 of credit on a revolving basis to an entity controlled by Defendant City Center Group, LLC, another Cappelli-controlled entity. The funds for the White Plains loan agreement were advanced from an EPT White Plains bank account in Kansas City, and the loan agreement required payments be sent to EPT White Plains in Kansas City. Another transaction occurred on February 29, 2008, when Cappelli executed a promissory note in favor of EPT for the principal sum of $10,000,000.00. EPT had loaned this amount to Cappelli to finance development projects in which Cappelli had an ownership interest. Like the previous arrangements, the funds were advanced from EPT's bank in Kansas City, and Cappelli agreed to send his loan payments to EPT in Kansas City.

Cappelli visited EPT in Kansas City on March 9, 2008. According to Cappelli, he "briefly stopped" his plane in Kansas City to pick up Brain and Greg Silvers, EPT's General Counsel, for a weekend of golf and relaxation in Las Vegas. Cappelli claims he never left the plane and did not discuss any business in Missouri. Brain counters that Cappelli organized the trip so that he and Silvers could meet a potential lender and a prospective investor for the Concord Resort project, another Cappelli-related venture. Brain claims that the entire trip had a business purpose and that the Concord Resort project was discussed in Missouri. Cappelli visited EPT in Kansas City a second time on March 19, 2008, to discuss a potential investment in the Schlitterbahn Waterpark project. Cappelli reportedly told Brain that he considered the two to be partners and that he wanted to work together on the Schlitterbahn project as they had done with the New York deals. Ryan Smith, a Director-Investments for EPT, also reportedly overheard Cappelli saying that the Schlitterbahn project was "intertwined" with New Rochelle and Concord Resort projects.

On August 20, 2008, Defendant Concord Associates, LP transferred 1,500 acres of New York real estate to Defendant Concord Resort, LLC, another Cappelli-controlled

2

entity.  Concord Resort then pledged the real estate as collateral for a $225,000,000.00 loan from Plaintiff EPT Concord, a wholly owned subsidiary of EPT.  The promissory note provided for payments to be sent to EPT Concord in Kansas City, and the funds were advanced from an EPT bank account in Kansas City.  On October 31, 2008, Cappelli arranged for a jet to fly Brain and Silvers from Kansas City to Las Vegas to meet with Cappelli.  The next day, Brain and Silvers returned to Kansas City; Cappelli flew with them but remained in the plane.  According to Brain, business relating to the Concord Resort project was discussed during the trip in Missouri as well as in and en route from Las Vegas.

EPT Concord and Concord Resort entered into discussions regarding possible restructuring of the loan in 2009.  On November 15, 2009, Cappelli flew to Kansas City and met with Brain, and Cappelli met Brain again in Kansas City 1 week later.  Cappelli claims the purpose of these visits was to engage in settlement negotiations.  Brain states the parties also discussed whether a collection action should be initiated to terminate the business relationship.

Plaintiffs filed this action against Defendants in the Circuit Court of Jackson County, Missouri on December 31, 2009.  Plaintiffs allege Defendants failed to make payments under the applicable loan documents resulting in damages totaling $163,118,557.00, plus interest and attorney fees.  Defendants removed the action to federal court on the basis of diversity jurisdiction and filed the instant motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Southern District of New York.

## II.  DISCUSSION

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant.  The Court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor.  *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).  A court has personal jurisdiction over

nonresident defendant if the forum state's long-arm statute is met and the exercise of personal jurisdiction over the defendant does not violate due process. *See id.* Because the Missouri long-arm statute authorizes the exercise of jurisdiction over nonresidents to the extent permissible under the due process clause, the Court can turn immediately to the question whether the assertion of personal jurisdiction would violate due process. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004); *see Federal Deposit Ins. Corp. v. Malmo*, 939 F.2d 535, 537 (8th Cir. 1991) (holding that court need not discuss whether defendant engaged in conduct within ambit of Missouri long-arm statute). The Court considers five factors, giving significant weight to the first three: (1) the nature and quality of the contacts with Missouri; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the convenience of the parties. *See Romak USA*, 384 F.3d at 984.

Plaintiffs have made a prima facie showing of personal jurisdiction over Defendants. The Court acknowledges the loan documents' choice of law clauses favoring New York law and the fact that the real estate underlying the loan transactions was located in New York. Jurisdiction is nevertheless warranted because Plaintiffs have shown that Cappelli–on behalf of himself and his various entities–aggressively pursued and secured a long-term business relationship with Plaintiffs through numerous mail and telephone contacts and through personal visits to Plaintiffs in Missouri (excluding settlement talks). *See St. Jude Medical, Inc. v. Lifecare Intern., Inc.*, 250 F.3d 587, 591-93 (8th Cir. 2001) (holding nonresidents had minimum contacts with forum in part because nonresident initiated contact with plaintiff in forum and parties had long-term, ongoing business relationship with numerous attempts by nonresidents to develop more business opportunities with plaintiff in forum); *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1433-34 (8th Cir. 1995) (holding that numerous mail and telephone contacts coupled with physical visits indicated nonresident's purposeful

availment toward forum state).[1] Defendants received substantial loans as a result of Plaintiff's input from Missouri. *See Dudley v. Dittmer,* 795 F.2d 669, 672 (8th Cir. 1986) (identifying receipt of substantial profits from commerce with forum residents as a contact held sufficient in various combinations to justify personal jurisdiction). The fact that the loan funds were advanced from Plaintiffs' Missouri bank account also favors personal jurisdiction, as well as the fact that Defendants agreed to send their loan payments to Plaintiffs in Missouri. *See Star Stone Quarries, Inc. v. Garland*, 300 F. Supp. 2d 1177, 1181-82 (D. Utah 2003) (holding that nonresidents' acts–which included sending payments to plaintiff in forum–constituted purposeful availment); *Danton v. Innovative Gaming Corp. of America*, 246 F. Supp. 2d 64, 70-71 (D. Me. 2003) (holding that nonresident's acts–which included receiving loan funds by wire transfer from forum bank–were sufficient for personal jurisdiction). Defendants' contacts with Missouri were neither random, attenuated, or fortuitous, and Missouri has a substantial interest in providing a local forum in which its residents may litigate claims against non-residents. Whatever inconvenience Defendants might experience by being required to litigate in Missouri would merely be shifted to Plaintiffs if they were forced to litigate in New York. Defendants' motion to dismiss for lack of personal jurisdiction is denied.

The Court also denies Defendants' motion to transfer venue. Although some operative events occurred in New York, the Court gives considerable deference to Plaintiffs' choice of forum because some of the operative events also took place in Missouri. *See Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) (stating general rule); *National Mortg. Network, Inc. v. Home Equity Centers, Inc.*, 683 F. Supp. 116, 119 (E.D. Pa. 1988) (noting plaintiff's choice deserves less weight where *no* operative facts occurred in forum). The inconvenience Defendants may experience by being required to litigate in Missouri and transport its evidence to this forum does not justify transfer. *See Terra Intern.*, 119 F.3d at 696-97 ("'Merely

---

[1] Defendants' physical presence in Missouri is a notable distinction between this case and *Mountaire Feeds, Inc. v. Agro Impex, S. A.*, 677 F.2d 651, 655 (8th Cir. 1982) and *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir. 1982).

shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue.'") (citation omitted).  Defendants' other reasons for transfer also are not persuasive.  Cappelli's statement that "upon information and belief, [Defendants' nonparty witnesses] will not agree to appear" in Missouri to give live testimony is not compelling, given that he offers no indication why he believes this.  *Cf. Hernandez v. Texas Capital Bank, N.A.*, No. 07-0726-CV-W-ODS, 2008 WL 342758, at *4 (W.D. Mo. February 5, 2008) (discounting argument that merely assumed witnesses would not appear voluntarily in Missouri).  The fact that EPT Concord's only remedy against Concord Associates may be foreclosure–which Defendants argue must be commenced in New York–also does not weigh substantially in favor of venue change, nor do the choice of law provisions favoring New York law.  Defendants have not established that another forum would be more convenient and that the interest of justice favors transfer.  *See* 28 U.S.C. § 1404(a).

### III.  CONCLUSION

This Court has personal jurisdiction over Defendants and venue will remain in this forum.  Defendants' motion to dismiss or to transfer venue is denied.
IT IS SO ORDERED.

                                    /s/ Ortrie D. Smith
                                    ORTRIE D. SMITH, JUDGE
DATE: April 23, 2010              UNITED STATES DISTRICT COURT